## ARLIE ESLINGER v. STATE.

No. A-7196. Opinion Filed Jan. 26, 1929.
(273 Pac. 1024.)

E. B. McMahan, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Cimarron county upon an information charging that the defendant did then and there unlawfully, fraudulently, and feloniously by fraud, take, steal, and carry away one certain Whippet four-cylinder coach automobile, the property of Lester Burrow, and of the value of $775, with the fraudulent, unlawful, and felonious intent to deprive the owner thereof and to convert the same to his own use, and was sentenced to imprisonment in the state penitentiary for five years.   Motion for new trial was filed, considered, and overruled, and exceptions duly saved, and the defendant has appealed to this court.

The testimony on behalf of the state, in substance, is as follows:  Lester Burrow testified that he knew the defendant during the year 1927; that he was the owner of a Whippet coach; that on November 12, 1927, he en-

tered into a contract with the defendant whereby the defendant was to deliver to him a Whippet coach automobile, on or before January 1, 1928; that witness turned over to the defendant a secondhand Whippet coach as a part payment for the new car, and was to pay $65 in money in addition to the secondhand car turned over to defendant, and was to have the option of 90 days after the car was delivered to him to pay the $65. Witness stated that just before the first of the year he went over to defendant's place and wanted him to go to Guymon that day to see Mr. Payne, manager of the Panhandle Automobile Company, whose headquarters were in Guymon; that he could not get the defendant to go with him, and about the first of the year he started over to see the defendant and learned that defendant had left his residence driving the secondhand Whippet car that witness had turned over to him; that, when the trade was made, defendant talked something about going into the garage business, and that the contract he made with witness had to be satisfactory to Mr. Payne.

Testimony further discloses that defendant was apprehended near Neosho, Mo., and there gave the officers information as to the disposition he had made of the car he received from Burrow. The record discloses that defendant had been making sales of cars for Mr. Payne, of the Panhandle Motor Company, which Mr. Payne represented and getting commissions upon cars he found buyers for. Witness testified defendant was not an agent for the company, but where he brought a buyer to them and a sale was made the defendant was paid a commission. Mr. Payne stated defendant had found several buyers for the company.

The prosecuting witness stated that defendant did not state at the time he delivered the car to him that he was agent for Bob Payne, but did tell him he would get a new car through Bob Payne; that the car would

be delivered about the first of the year, if not before. The prosecuting witness further stated that he turned the car over to Mr. Eslinger pursuant to the terms of the contract entered into between him and the defendant on November 12, 1927, and that he had no further claim on the car he turned over to Mr. Eslinger and did not consider it was his car any longer; that when he turned it over he parted with the title as well as the possession of the car. He did not know of the defendant finding buyers for any other cars after he and defendant entered into the contract for the new car which he was to receive for his old car and the $65. Witness further stated he called on Mr. Payne and was advised that he had nothing to do with the contract and after that he made several trips to see the defendant and never could find him at home.

Witness on redirect examination stated when he parted with the possession of the car he did not know he was parting with his title to the defendant, but he parted with it on the credit of the Panhandle Motor Company, of which Mr. Payne was manager. The defendant stated to the witness that he would deliver the written contract he had entered into to Mr. Payne the next day.

This is, in substance, the testimony offered by the state. At the close of the state's testimony, defendant made the following request: "Comes now the defendant and requests the court to direct the jury to return a verdict of not guilty for the reason that the evidence is insufficient to establish the guilt of the defendant of the crime charged or of any other public offense and for the further reason that there is a fatal variance between the information and the evidence in that the evidence shows if any crime was committed it was the crime of obtaining property under false pretense and not the crime of larceny."

The request of the defendant to direct the jury to return a verdict of not guilty was overruled, and defendant duly excepted. The question to be determined is, the suffi-

ciency of the evidence to sustain the verdict. There is no conflict in the testimony. The defendant offered no proof as to the transactions between the prosecuting witness Lester Burrow and himself. The defendant was charged and convicted of stealing the automobile of the prosecuting witness. It is urged by the defendant that the fact that the prosecutor entered into a written contract to sell a second-hand car for a new car and to pay $65 additional for the new car, which was to be delivered the 1st of January, 1928, and the money to be paid at that time or to be paid within 90 days, and the prosecuting witness delivered his car to the defendant under his contract, is not sufficient to sustain a conviction of larceny.

Section 2101, C. O. S. 1921, in defining larceny, reads: "Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

Section 2103, C. O. S. 1921, defines the degrees of larceny: "Larceny is divided into two degrees; the first of which is termed grand larceny, the second petit larceny."

Section 2104, C. O. S. 1921, reads as follows: "Grand larceny is larceny committed in either of the following cases: First. When the property taken is of value exceeding twenty dollars. Second. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another. Larceny in other cases is petit larceny."

Section 2120, C. O. S. 1921, reads as follows: "Stealing Automobile. Any person in this state who shall steal an automobile or other automotive driven vehicle shall be guilty of a felony, and upon conviction shall be punished by confinement in the state penitentiary for a term of not less than five (5) years, nor more than twenty (20) years."

In Newcomb v. State, 23 Okla. Cr. 172, on page 184, 213 P. 900, 905, this court said: "In this connection it is

contended that the information charged both grand larceny under sections 2101 and 2104, Compiled Statutes 1921, and larceny of an automobile under section 2120, Id. The latter statute is equivalent in its terms to section 2116, Compiled Statutes 1921, relative to the larceny of live stock."

It is urged by the defendant that he should not be found guilty and sentenced to serve a term of five years in the penitentiary, or for any other period of time upon mere presumption of the prosecuting witness, and he contends that the mere presumption is all that was shown in this case, and that the presumption was not well founded. The defendant further urges that the only offense represented and relied upon by the prosecuting witness was the statement defendant claims he was taking the contract to Mr. Payne or that the contract had to be all right with Mr. Payne, and that he would deliver the new car through Payne on or before January 1, 1928.

The defendant is presumed to know the consequences of his own acts, and his intent must be judged by his acts. Up until the time of his arrest at Neosho, Mo., so far as the record discloses, he had no communication with the witness from whom he secured the car, nor did he make any effort to return the car or to deliver to the witness a new car that he was to have delivered to him. It is argued by the defendant at length and with great force, that the state failed to prove fraud on the part of the defendant in obtaining the consent of the owner to give possession of the car, which was taken away by him and sold.

We hold that the proof in this case shows conclusively that the defendant, if he ever intended to comply with the contract, clearly violated the terms of the same by converting the car taken to his own use.

The testimony in this case clearly shows that the defendant, when he got possession of the car, intended to ap-

propriate it to his own use and deprive the owner of his property. No effort is made by the defendant to show when he got possession of the prosecuting witness' car he attempted to carry out, or intended to carry out the contract which he made with the prosecuting witness when he got possession of the car. Every act of the defendant as disclosed by the record subsequent to his getting possession of the car shows that he did not intend to comply with his contract.

Some complaint is made to the court's instructions, but upon a careful examination of all the instructions we fail to find such material errors as would require a reversal. The instructions, considering them in their entirety, fairly stated the law applicable to the facts in this case. It is urged by the defendant that the court erred in refusing to give instructions requested by him, but upon an examination, and considering all of the instructions together, we find there is no merit in the defendant's contention.

The defendant also urges that the court erred in not properly admonishing the jury as to their duties while they were considering their verdict, and permitting the jurors to separate after the final submission of the case and before they had agreed upon a verdict, and in permitting them to take rooms at the hotel and be left without a sworn bailiff.

This question has been before this court before in many cases. In Nowabbi v. State, 31 Okla. Cr. 158, 237 P. 868, this court said: "After the case is finally submitted to the jury, if they are permitted to separate, the presumption is that the separation was prejudicial, and in such case a judgment of guilty should be reversed, unless the state shall satisfactorily show that the defendant was not prejudiced thereby." Chance v. State, 5 Okla. Cr. 194, 113 P. 996; Horn v. State, 13 Okla. Cr. 354, 164 P. 683; and numerous other cases.

In this case we think the trial court manifestly abused its discretion in failing to have a bailiff properly sworn and in admonishing the jury as to their duties while considering the verdict, and, while this was an abuse of discretion, it is we think not necessarily reversible, in the absence of any showing of prejudice to the defendant.

Upon the motion for a new trial, the state called several witnesses to show that the rights of the defendant had not been prejudiced by reason of the jury separating and being left without a sworn bailiff. The court, after hearing the evidence, held the rights of the defendant had not been prejudiced by reason of the fact that the jury separated and roomed at the hotel over night without a sworn bailiff. A careful examination of the record shows the defendant was not prejudiced by the action of the court in permitting the jury to retire to the hotel without admonishing them of their duties without a sworn bailiff, where the jury retired and remained all night without the presence of the bailiff.

Upon a consideration of the entire case, we are convinced that the defendant was accorded his full constitutional rights and had a fair and impartial trial. The evidence is sufficient to sustain the verdict.

The case is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.